The next case today is Ambac Assurance Corporation v. Commonwealth of Puerto Rico et al. Appeal number 20-1657. Attorney Glenn, please introduce yourself for the record and proceed with your argument. Thank you. Andrew Glenn, Glenn Ager Bergman & Fuentes, LLP, on behalf of Appellant Ambac Assurance Corporation. With the court's permission, I'd like to reserve three minutes for rebuttal. You may. Thank you. May it please the court, the district court erred in holding that Ambac's complaint violated the automatic stay in the bankruptcy code because none of the claims asserted below were against the Commonwealth and its instrumentality, the Puerto Rico Highways and Transportation Authority, that's HTA. All the had sold. The district court committed two fundamental errors to reach this conclusion. The court erred by holding that Ambac was seeking to completely rescind, cancel, abrogate the toll concession extension agreement, despite Ambac's repeated clarifications and assurances that it was only seeking money damages from Metropistas who bought those collection rights. The fundamental point of this action is that Metropistas underpaid for the toll concession extension in a no-bid auction when the Commonwealth and HTA were in severe financial distress. Fundamentally, your honors, we want Metropistas to pay what it should have paid, but didn't. We're out hundreds of millions of dollars based on our holdings of HTA bonds. Those tolls were pledged to us under various bond documents. To reach this conclusion, the court delved into the underlying merits. It held that Ambac could not prove that it would be impossible to completely rescind the underlying concession extension agreement, and therefore, under Puerto Rico law, it was never entitled to seek the money damages that it clarified that it was seeking. Finally, the court held that the automatic stay would block Ambac... Counsel, excuse me on that, on the point that you just made, if you would please. I mean, the section 3499 by its terms raises the issue of impossibility. You seem to treat this issue of impossibility and why you have to address it in order to get your claim to damages as some kind of an imposition on your client, that it's not really an issue when the very statute that you invoked deals with the issue of impossibility by its very terms. So how can you argue that impossibility is not properly before the court in deciding the applicability of the stay? I just don't understand that. Judge, if we had told the court that we are resorting to that statute, we might lose. The underlying court adjudicating those claims might hold that it was not impossible and we had resort to other modalities to achieve our goals, which is complete rescission of the contract, which we don't want. The application of the automatic stay judge is limited to the inquiry of whether the claim is against the debtor, as opposed to a third party who's not subject to the automatic stay. So when courts look at automatic stay motions, their job is not to adjudicate whether you're going to win in the underlying action. The job of the court is to adjudicate whether the debtor's property will be affected by that action. And given our clarifications in writing that we were not seeking to rescind the contract, we have no desire to do that, Judge. We're seeking to pursue this claim of money damages through indemnity under section 3499. If we lose, we lose. But if we win, the debtor's property is not going to be affected. Did you file a motion to amend your complaint? We did not. So the complaint itself, though, talks about rescission. It does. And that's important point, Judge, because every fraudulent conveyance case all around the country and in the bankruptcy code starts with one fundamental principle. Fraudulent conveyance is by definition an effort to avoid a null or rescind a transfer, because that's what makes it fraudulent. It was not given for fair value. And so the remedy in fraudulent conveyance is to make the creditors whole. And so even though the nominal predicate of all fraudulent conveyance actions is that you're avoiding the transaction, you're not agreeing to the transaction, you're arguing that it was an underpayment of the value, you can seek the property back and restore the debtor to its original position. But here we don't want that. I mean, rescission is a nonsensical remedy here. Isn't that the problem? I mean, the rescission by its nature restores the contracting parties to the status quo. And if through rescission, your concerns can be addressed through a return to the status quo, which I guess would mean, well, what would the status quo mean here? I gather it would mean that the money that Metropista paid to HTA would come back to it, and Metropista would have to renounce its interest in those intangibles, the tolls. Okay, you're shaking your head. Please tell me what would the status quo mean here? Okay. And I'm going to purposely not answer the question about the status quo, because we're in a odd procedural construct. Okay. During the two years, Judge, when this asset was property of the bankruptcy estate. Okay. At that point, the debtor had the exclusive right to bring that case. You're exactly right, Judge. That debtor would have had the right to restore that property to the status quo ante before the concession was granted. Once that ended, okay, this now becomes a creditor remedy. And under 3499, it's our position under this law, just like every other fraudulent conveyance law, that as a creditor, we are entitled not to restore the status quo, but to get these money damages to put us in the position and we receive the money that we were entitled to as the holders of liens on these tolls. Fraudulent conveyance law can not only keep a contract intact, I think we cited the RML communications case in our brief in the Third Circuit, but it can require the third party to pay money to accomplish the same goal. And so that allows maximum flexibility. Unfortunately, it's not as clear in Puerto Rico as it is under the Uniform Fraudulent Transfer Act or under the Bankruptcy Code, where the party bringing the claim can cancel the whole thing, bring the property back. Here, fraudulent conveyance law allows the creditor to get additional damages for underpaid transactions while the company remains solvent in this case. What's your measure of damages here? You say you want damages, what is your measure of damages here? So, in the case of the first extension agreement judge, which were not challenging, that was done under a bidding process, and the third party, of that term, they only paid $115 million, plus they got an increase in the portion, went from 50 to 75%. So, our damages will be the delta between $115 million and the amount that should have been paid, and we believe that money should go into our bank account. We don't want the underlying agreement to be rescinded for the reason that you've identified, the money will go to HTA. They don't want that remedy. It's now our remedy. We're just looking to be made whole, not even made whole, like for the hundreds of millions of dollars that we've lost as a creditor of HTA. And that's the fundamental point here. This was a transaction that was consummated under the cover of a moratorium act right before the company, right before the HTA, went into this Title III proceeding, and under very, very suspicious circumstances. Now, so let me ask you this. When your client filed his claim directly against HTA before the stay came in play, what remedy were you seeking from HTA when you filed that lawsuit directly against them? What were you seeking? I believe there was an injunction sought against the disposition of some of those tolls. I was not counsel in that case, so I don't have the particulars off the top of my head, but I believe it was for injunctive relief, and we lost that, I believe, also because we could resort to money damages, just like we're seeking here. And then in the remedy, in the damage remedy that you seek for Metropista, why aren't those same toll revenues implicated in that remedy that you seek? I'm sorry, which same toll revenues, Judge? The highway authority. The toll revenues generated by the highway authority. I mean, that's the asset that Metropista now has a claim on as a result of this deal with the highway authority, right? Yes, it has the right to collect those tolls over 40, I believe now 50 years, something in that magnitude, and we had liens on those tolls, so it's our position that those amounts, those payments should have gone to pay our debts. That's correct. Okay, so why doesn't that claim of a lien inescapably involve the highway authority's interest in those revenue proceeds? I mean, it just seems it's very hard to see how the HTA is a stranger to these claims that you wish to bring against Metropista. I mean, even the unjust enrichment claim you have, that is actually the highway authority's claim, and your position is you should be able to step into their shoes and pursue that claim. Isn't that correct? No, Judge. We had a separate property interest in those tolls, and that's the fundamental point. We're not an equity holder. We're not an unsecured creditor. Those tolls were destined for our bank accounts, and I also struggle, and if you look at their brief and you look at the decision below, there's this concept that the claim we're asserting is being cast out on the integrity of the extension agreement, and in very general words to that effect, that's not the standard, Judge. It's not the standard. The standard is, is a debtor on the defendant's side of the V? The answer to that question is no. Is a debtor's property going to be decreased or otherwise affected by our litigation? And the answer to is no, because we're seeking only monetary damages, and they fail to identify any proof at all that they're going to be affected other than these general platitudes. Time has expired. And if I can make just one last point on this lien point, if a debtor had a mortgage on their property and then wrongfully transferred that property, but without satisfying the lien, I think we all would agree that the bank in that case would still have a lien on that property, and if the seller of that property went into bankruptcy, I still have that lien on that property. I still can go after that third party, even if the debtor was once there. So I'd ask the court to carefully parse through the platitudes and look at the supporting case law for what they've said, because there is none. Thank you very much. Thank you, Counselor. Attorney Glenn, at this time, please mute your audio and video. Attorney Barak, please introduce yourself on the record and proceed. Good afternoon, Your Honors. I need to please the court. My name is Eud Barak from the law firm Pro Scargoes, and I represent the Financial Oversight and Management Board for Puerto Rico as representative of the Highway Transportation Authority, APALE, in this case. Your Honors, we're here today because AMBAC filed a lawsuit against one of HTA contracting parties in an attempt to obtain better recovery on its bond claim against HTA than other similar situated creditor and exercise control over HTA's property. AMBAC never requested to leave the state to this proceeding. In a moment, I will discuss why this action violates several different subsections of Section 362A of the Bankruptcy Code. Fundamentally, AMBAC actions violate the automaticity because it, one, interferes with HTA property and creates peaceful litigation in different courts relating to issues that are at the heart of the HTA restructuring. Two, allow AMBAC to obtain larger recovery than HTA other creditors against PROMISA and the Bankruptcy Code Equality of Distribution Principle, and three, involve the non-Title III court determining the scope and validity of the lien HTA granted AMBAC in HTA's property under HTA's resolution. I will now go quickly to the first cause of action, and I think it's very, and I think Your Honors touched upon it, that AMBAC had no other choice but to move for rescission. In doing so, and the reason, by the way, they had to do it is because under Puerto Rico law, they had no privity with Metropistas, and in order to get to Metropistas, they had to invoke the fraudulent transfer cause of action, and that resides within the rescission statute. Once you move into the rescission statute, your remedy are determined by the rescission statute. You can't just pick and choose any remedy you want to choose, and that's why AMBAC's clarification, so to speak, clarification, are not really clarification. What AMBAC did here is basically removed one part of the complaint, basically the rescission part of it, remedy, and put instead money damages. That's not basically clarification. That's rewriting the complaint. AMBAC, PHP… Excuse me, counsel. I mean, the statute does contemplate the possibility of a damage award so long as the impossibility of rescission is established, right? I mean, it's not like they're not creating the possibility of a damage award. The statute itself contemplates that possibility, does it not? The statute itself does. The complaint, obviously, nowhere mentioned money damage, nowhere mentioned 3499, and this was only an attempt to clarify, which wasn't really clarification, because they really thought rescission of the contract, and that's exercise control over property of the debtor. And what if they continue with their lawsuit before the non-Title III court and then get to the end of it, and the court there said, gee, you didn't actually… It didn't show impossibility, so I guess now I'm rescinding the contract. You can't do that. The state doesn't apply only to successful or not successful causes of action. Once you move to rescission, you have to go by the statute, and you can't just invent the remedies which are not there. So, if AMIC is allowed to proceed just against… I'm sorry, sorry for me to pronounce… An award of damages against HTA. That's correct. I mean, Beneficis would only have to pay on the assumption that it underpaid for the asset. There's no doubt that the stay under 362A violates an attempt to recover on a claim against the debtor, including when it's against the third party. That's 362A1 and 362A6. So, the stay would be impacted. By the way, HTA has a potential cause of action under the unjust enrichment claim that is obviously its cause of action, and by AMBAC trying to basically move under a different cause of action, it's basically usurping the potential claims that the debtor has against Metropistas itself if it chooses to bring it. They said you've abandoned that claim. It's not that… That unjust enrichment claim is no longer yours. Well, they argue that because of Section 546A of the bankruptcy code, the two-year statute of limitation elapsed. That statute of limitation applies maybe to the fraudulent transfer cause of action. We disagree with that. An unjust enrichment claim has a 15-year statute of limitation and is not limited by Section 546A. So, there's no way we abandon it. We can still bring it at any time that we choose to in the next probably 13 years or so. So, their argument is wrong with respect to that, and we submit it also with respect to the fraudulent transfer action. There's no state here, but the debtor still has at least an equitable interest in the proceeds of that potential fraudulent transfer case. So, we don't see if 546A applies here at all. Nothing, by the way, in Section 546A changed the scope of Section 362A. None of it whatsoever. I mean, nothing says that. They tried to basically impose the Unisys case from this circuit, but I think the case was completely in the position that we have here. In Unisys, it was a 362A3 case, meaning the property of the state. And 362A1 and A3, an attempt to recover on a claim, is not even implicated. In Unisys, we know that the facts were very, very different than the one here. And that is saying, well, the court in Unisys would raise the issue. The court there said that it's free of any stay once there's an abandonment. And the court would not have said that if 362A1 and A3 and A6 would be implicated. And we submit, Your Honor, that the case only stands for the precedent that it discusses and not for issues not in the decision. And indeed, the Supreme Court has stated that questions with nearly lurking the record, neither brought to the attention of the court, nor ruled upon, are not to be considered as having been decided as they constitute the precedents. And that Webster v. Fole, 266 U.S. House... Counsel, I'm not sure I understand how you answered Judge Thompson's question. I gather it's your position that having invoked Section 3499, the plaintiff here cannot walk away from the fact that that statute by its very terms, I mean, it says that you cannot invoke that statute and get damages unless you establish the impossibility of rescission. And so inescapably, the rescission issue has got to be addressed. And that inescapably requires you to consider the relationship between HTA and Metropista. And so that contract between those parties, which includes the debtor, I mean, that's on the table and you can't get away from it. And that's why the court was correct to rule that this action is stayed because the debtor is inescapably involved. I mean, I gather that's your position. Is that correct? Yes, Your Honor. I think that's right. And I think, and I hope I'm answering your question, but... Maybe it's hard to understand it, but why don't you go ahead and try. So, Attorney Glenn, for appellants, raised the issue that the court actually went into the merits and shouldn't have gone into the merits of the impossibility. We submit that, and I think Your Honor insinuated that, that this argument gets them nowhere because the complaint on its face, based on thought rescission, and the case of one, as you said, raised the 3499 in the impossibility. The Title III court did exactly what it needed to do. It reviewed the cause of action contained in the complaint to determine whether they violated the stay. This court actually engaged in very similar analysis in the Dar case less than two years ago, when it actually analyzed the state, the unjust enrichment claim that the creditor brought and said whether that was derivative of their state or not. It basically determined that is derivative, it's not independent, so they violated the stay under 362A3 and basically imposed the stay. So I think the court was actually right in looking into those issues. And by the way, the court didn't actually determine, it said they failed to demonstrate impossibility. I think it's also very important to note here that the court didn't analyze the complaint to see whether the AMBAC prevailed under Puerto Rico law, but rather to see if AMBAC indeed requested the relief, it claimed it did. That's an extension of what the court did here. Now, AMBAC imposed the Supreme Court case in N to basically strengthen the fact that the court should not have looked into the rescission and the impossibility issues. While AMBAC stands for the proposition that the court should not look into the legitimacy of the public policy being carried by a government, the court can look to see if the proposed governmental action is an act to collect the debt or instead whether it furthers public welfare and safety. This court in McClellan, 386F3-324, said that the First Circuit has stated that the lower court should engage in a fact-intensive inquiry to determine the true nature and effect of the government's functions. So we see here that the court has an obligation. AMBAC is the one who raised the issue of impossibility through a reference to section 3499, and the court only looked to see whether there was something there. If the court would not have done it on the face of the complaint, AMBAC would have asked for rescission. And by the way, just maybe one more word about the clarification. Here, the clarification happened not even before the court that AMBAC filed the clarification. You can't clarify them in a completely different court. I don't think they even cited any case for that proposition. I'm really having some difficulty understanding your argument. Any relief on counts one and two, any relief other than rescission, outright rescission, right? And some kind of money damage. How does that outcome, those outcomes on either of those counts, undermine the extension agreement? Can you talk about that a little bit? Well, I think there's two things here. Under count one, if they ask for rescission, obviously there's no... if the extension agreement is rescinded, it obviously... I understand. I mean money damages under the other... Money damages implicate in two ways. One, an action to obtain possession of the debtor's property pursuant to section 362A3. So the proceeds of any... and assuming that they didn't move for rescission, as we said, they only moved for money damages and they managed somehow to clarify. If they did that, they would still be trying to get the money that actually should go to the estate. And that's a violation of section 362A3. The Fifth Circuit has held as much in mortgage America. Another way that they violate the estate by doing so is basically by trying to recover on a claim under section 362A1 and A6. The Second Circuit has held as much in colonial realty. Basically in that case, the FDIC is a receiver of a bank who would, the creditor, try to recover money from the debtor's wife. And the Second Circuit says, no, you can't do that. You have to stand in line with all other creditors because the state doesn't only protect the debtor, it protects the integrity that all creditors are similarly situated, should receive the same equal treatment. And this court has followed that in the Sunshine Development case. Time has expired. You can finish your answer. I was about to get into 362A4 and the third course of action. I wasn't asking about that, so I don't want to extend you for that. I hope I answered your question about how it implicates. Thank you, Counselor. Attorney Barak, if you could mute yourself at this time. And Attorney Maturana, please introduce yourself for the record and proceed. Thank you. May it please the court, Keith Maturana of Gibson, Dun and Crutcher, on behalf of Appellee Metropistas. Your Honors, I'll be brief. And in my time, I want to echo and supplement some of the comments made by Mr. Barak, all of which Metropistas fully supports. Mr. Barak fully covered the numerous deficiencies in the appellant's arguments, including the following. First, and most importantly, AMBAC's complaint against Metropistas, which, as was noted, was never amended, on its face, as for rescission. Excuse me. I'm sorry. I'm sorry, Judge. Attorney Barak fell out of the meeting and he's trying to reenter the meeting. I'm going to let him back in. I apologize. Ms. Barak, are you there? Yes, Your Honor. Okay. All right. Great. So, Judge, if you're ready, we can continue again. Yes. Yes. Okay. Again, may it please the Court, Keith Moderano of Gibson, Dun and Crutcher, on behalf of Appellee Metropistas. To continue with my argument, Your Honors, the most important point here is that AMBAC's complaint, which was never amended, on its face, as for rescission of a contract, that contract is property of the debtor. We heard today that, no, they clarified that. It's really rescission of a transfer. That is not, first off, that's not what the complaint says. And importantly, that's not a cause of action under Puerto Rico law. The rescission of a contract is the only remedy available under Puerto Rico law for alleged fraudulent conveyances. There is no uniform Fraudulent Transfer Act or Conveyance Act that is applicable. And as was noted, money damages are available, but only when the appellant has established both impossibility and bad faith on the part of the transferee. And in this case, AMBAC cannot demonstrate that those requirements were met. Now, perhaps even more importantly, Your Honors, each of the causes of action that were brought by appellant in its complaints, and assuming that they're even valid in the first instance, clearly belong to the debtor and only belong derivatively to the appellant as a creditor. As such, the appellant's, AMBAC's attempt to control these causes of action is in of itself a violation of the automatic stay. There are no direct complaints or causes of action that AMBAC has against Metro Pistis. The only way that it can get to Metro Pistis is through the debtors. And I'll touch on unjust enrichment in a moment, if you will let me. But prior to that... But their argument is that they have a lien on these tolls. They may have a lien. Well, as I understand it, whether or not in the scope of that lien is actually is something that is in dispute and is being litigated at the Title III court level, on its own appeal. But to the extent that they have liens on those tolls, again, those would be liens as against HTA. HTA, there were no grant of a lien from Metro Pistis. The grant of the lien that's argued here is from HTA and from the underlying bond resolutions here, Your Honor. Counsel, the court below introduced this notion of the claim that has been brought inescapably implicates the integrity, the honor of HTA. And in that sense, you're not a stranger to the proceedings. That strikes me as an odd argument. What's the authority for that? That sounds a little bit made up, frankly. Where does that come from? I think what the court was getting at is that at some point, and again, I noted this before, there's the only path to Metro Pistis is through HTA, whether it's grabbing onto causes of actions that belong to HTA. Even though there are arguments that they were abandoned, I don't believe any of those hold water. But it's grabbing onto either HTA assets or it's unwinding this contract, valuable estate property to HTA. And to the extent that you were to rescind that contract or otherwise modify that contract, that is something, and just to be clear, and I don't think this point was raised by Mr. Barak, but assuming that this is a valuable debtor property, this contract interest, may I finish my thought? Yes, please. Yes, please. Assuming that this is a valuable piece of property, this contract interest, the debtor will presumably want to assume that contract. They'll want to continue that contract going forward post bankruptcy. And in order to do that, you cannot modify the contract. A contract needs to be assumed in toto. It needs to be assumed in its entirety. So the concept that you can somehow impact it, make modifications, take a little bit of money away from Metro Pistis, that doesn't work assuming that the debtor wants to assume that contract. And by taking away its to assume that contract, you are impacting debtor property. Thanks, Counselor. Thank you, Your Honors. Unless you have any other further questions, I will stand down. Thank you. Attorney Moderata, please mute your audio and video. Attorney Glenn, please reintroduce yourself for the record. Thank you again, Andrew Glenn, on behalf of AMBAC. I'll try to be brief. First, Judge Lipez, every fraudulent conveyance claim involves a debtor. The debtor transfers property, and therefore the standard can't be that because the debtor is somehow affected or involved that a creditor can't bring a fraudulent conveyance claim. Secondly, on the issue of flexibility, the question here is both the procedural and that the judge shouldn't have delved into that underlying issue. But I think there's an inherent contradiction here. Their claim is that the relief is not impossible in some metaphysical sense, because we might have the right to lift the automatic stay. But if we had that right, and they didn't care about us lifting the automatic stay, they would have told us so. They're just trying to put up another roadblock because we agree the automatic stay does apply to the complete rescission of the contract. And that's why we're not pursuing that. And I take umbrage with the thought that AMBAC would somehow gain a trial court, tell your honors, tell Judge Swain that it would not be pursuing that very relief. And then say that, you know, at the end of that litigation, there's a gotcha here. We're on the record very clearly with you. We're on the record with the district court. If that were the issue, someone would have said, okay, if you amend your complaint, that's off the table. That's not the position that they're taking. They're just throwing it up as another procedural roadblock. Counselor, can I just go back, I guess, where I began? I mean, you do invoke a statute which gives you a possibility of a damage claim if you meet a precondition, which is showing that we're not interested in rescission. We're not trying to rescind. We just want damages. How can you, by that kind of clarification, remove what the statute seems to make an essential precondition to your right to damages? I don't understand how you can do that. So if you could explain why you think you can do that. In effect, we write the statute. We're not attempting to rewrite the statute. We're recognizing a statutory proof that we're going to have to prevail on when this claim is actually litigated. And that's the fundamental point. The statute speaks for itself. If we fail to prove that it was impossible because we were supposed to go into Judge Wayne's court, lift the automatic stay on a contract that my adversaries are saying is a valuable contract that it does not want to give up, we're going to do some litigation. So you're saying you're not, I think that's helpful. You're just saying this goes to your, it was premature. It was inappropriate to consider the impossibility aspect of the statute at this stage of the proceedings. That is your argument, correct? That is exactly the judge. Thanks, counsel. Thank you very much. That concludes arguments for today. This session of the Honorable United States Court of Appeals is now recessed until the next session of the court. God save the United States of America and this honorable court. Counsel, you may now disconnect from the meeting.